**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LUBE USA INCORPORATED,

                      Plaintiff,                              07-cv-14284

v.                                                Honorable Denise Page Hood

MICHIGAN MANUFACTURERS
SERVICE INCORPORATED,

                      Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT AS TO THE COUNTERCLAIMS**
**AND**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO ITS**
**CLAIMS FOR BREACH OF CONTRACT ON LIABILITY ONLY**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment as to the Counterclaims of Defendant **[Docket No. 32, filed Dec. 1, 2008]**. On February 6, 2009, the Plaintiff filed its Response **[Docket No. 38]**, to which the Defendant filed a Reply **[Docket No. 41, filed Feb. 16, 2009]**. Also before the Court is Plaintiff's second Motion for Summary Judgment as to its Claims for Breach of Contract and Unjust Enrichment **[Docket No. 34, filed Dec. 1, 2008]**. On February 6, 2009, the Defendant filed its Response **[Docket No. 39]**, to which Plaintiff filed a Reply[1] **[Docket No. 42, filed Feb. 16, 2009]**.

**II. STATEMENT OF FACTS**

_____

[1] The Court GRANTS Plaintiff's unopposed Motion for Leave to File Excess Pages **[Docket No. 40, filed Feb. 16, 2009]**.

The instant action arises from an alleged breach of an exclusive distribution agreement between Plaintiff, Lube USA, Inc. ("Lube"), and Defendant, Michigan Manufacturers Services, Inc. ("MMS").  Plaintiff Lube manufactures and sells lubrication systems and related products to a variety of industries throughout the United States.  (Pl.'s Mot. for Summ. Judg. as to Claims For Breach of Contract and Unjust Enrichment ("Pl.'s Mot. for Summ. Judg. #1), p. 1).  Defendant MMS is in the business of selling lubricating devices, equipment and systems, and alleges that Lube is its only viable supplier of these systems. (Def.'s Resp. to Pl.'s Mot. for Summ. Judg. #1, p.1).  MMS began purchasing products from Lube somewhere between the late 1980's and the early 1990's.  In early 1995, Lube USA and MMS entered into an agreement whereby MMS would serve as an exclusive distributor of Lube products in both Michigan and Ohio, and MMS would also receive a substantial discount on its Lube orders.  The parameters of this exclusive distributorship agreement are at the heart of the parties' dispute.  However, the uncontested facts reveal that the agreement was an oral agreement reached between Timothy Smith, President of MMS, and Kevin Keating, the former CEO of Lube.  Although the distributorship agreement between the parties was oral, it was partially memorialized in a letter from Lube USA to MMS dated February 20, 1995, which in pertinent part provides:

> 1. Lube USA will grant to MMS the exclusive rights to develop a distribution network and sell our products in the state of Ohio.  We acknowledge that this same right currently exist in the state of Michigan.
>
> 2. MMS will establish an office in the state of Ohio in 1995 and has already hired an individual to act as the sales manager for that state.
>
> 3. Lube USA will extend to MMS the opportunity to send this individual to Greenville for training with our technical and sales people.
> ...
>
> 5. We will increase your discount to 50% on all orders, in which the net amount

2

exceeds $20,000.  We will also issue an additional 2% credit, if the invoice is paid within 10 days.

6. You will provide me with a list of the shows that you are considering participating in during 1995-96.  Also, if we could get an overview of your advertising and marketing program for our product line, it would be very beneficial.

7. We will provide you with camera ready logo art.
....

I think that covers the major points.  If I left anything out, please advise.  I certainly acknowledge and appreciate the cooperation of MMS and I look forward to 1995-96.

[February 20, 1995 Agreement Letter ("1995 Agreement"), Pl.'s Mot. for Summ. J. #1, Ex.2].

By letter dated July 21, 1997, Lube USA informed MMS that it would be "hiring a new

Lube USA Regional Sales Manager for Michigan, Ohio, and Kentucky," and that this Regional

Sales Manager would "be responsible for working with MMS and expanding the user business.

While at the same time pursuing all OEM [Original Equipment Manufacturers] in these areas."

[July 21, 1997 Letter, Pl.'s Mot. for Summ. J., Ex. 3].  Based on this letter, and the deposition

testimony of Timothy Smith (President of MMS), Lube avers that MMS was informed that Lube

was thereby effectively eliminating the MMS's exclusivity agreement.  (Pl's Mot. for Summ. J.,

p.2). According to Lube, the decision to terminate the exclusivity agreement was due to its

dissatisfaction with MMS's performance as a Lube distributor, as best evidenced by a substantial

decline in sales beginning in the late 1990's.  (*Id.*, p.4)  Lube further submits that contrary to

their agreement, MMS failed to maintain a sales office and dedicated sales representative in

Ohio, and instead blamed its poor performance on a failing economy.  Lube also took issue with

MMS's payment schedule, which it claims was in violation of the agreement's 30 day term as a

result of consistently late payments and, on occasion, accounts extended to more than 120 days

past due.  (*Id.*)   MMS contends that the delayed payments were caused by Lube's shipping schedule.  In particular, MMS alleges that orders would be shipped and billed in a piecemeal fashion, which caused delays in MMS's ability to be paid by its customers.    Further, MMS claims that Lube would not invoice MMS for a shipment until 7-10 days after shipment, but would date the invoice using the date of shipment.  (Def.'s Resp. to Pl.'s Mot. for Summ. J. #1, p.3).

Also relevant to the instant dispute is the employment of Michael Cloutier.  From the summer of 1995 through August of 1997, Mr. Cloutier was employed by MMS as the sales representative for the state of Ohio.  On September 1, 1997, Cloutier left his employment at MMS, and went to work for Lube as its Regional Sales Manager.  In his new position with Lube, Cloutier's sales territory included the states of Michigan, Ohio, Kentucky, Tennessee, Indiana, Illinois, Wisconsin, Minnesota, Iowa and Mississippi.  This transition in employment gives rise to several of MMS's counterclaims against Lube.

On November 6, 2001, Lube attempted to terminate substantial portions of the 1995 Agreement.  In support of this assertion, MMS provides a letter from Shigeru Kuroda, Coordinator for Lube, to Timothy Smith ("2001 Letter").  In the 2001 Letter, Lube addressed MMS's declining sales value, and indicated that MMS was not substantially performing under the terms of the 1995 Agreement. [2001 Letter, Def.'s Resp. to Pl.'s Mot. for Summ. J. #1, Ex. 2].  In particular, the 2001 Letter references MMS's failure to obtain a direct product sales manager in each of the territories covered under the exclusive distribution agreement and a pattern of consistently late payments. [*Id.*].  As a result of these shortfalls, Lube decided to make the following changes to the 1995 Agreement: (1) all future agreements between the parties were

4

to be in the form of a written and signed distribution agreement; (2) MMS was required to be in contact with the Midwest Regional Sales Manager, Michael Cloutier; (3) the termination of the exclusivity agreement for Michigan and Ohio within 90 days of the receipt of the letter; (4) Lube maintained the current discount structure, but reserved the right to modify in the future after giving 90 days notice; (5) in order to maintain a discount pricing structure MMS was required to pay outstanding balances within 30 days. [*Id.*]. Finally, the 2001 Letter indicated that "[a]ny verbal, implied or inherent agreement will no longer be valid, any future agreements will need to be in written contractual form." [*Id.*].

Responding to the 2001 Letter, MMS stated that any "arbitrary decision to cancel our current contract with Lube USA will be viewed as a manner of further damage to [MMS]." [January 24, 2002 Letter, Def.'s Resp. to Pl.'s Mot. for Summ. J. #1, Ex.3]. After receiving this letter from Timothy Smith, Noubi Ochi, the new President of Lube, repudiated the 2001 Letter and agreed that MMS would serve as Lube's exclusive distributor of Lube products in Michigan and Ohio on the terms negotiated by Mr. Keating in 1995. (Def.'s Resp. to Pl.'s Mot. for Summ. J. #1, p.2). MMS claims that it was not until after this meeting with Mr. Ochi that MMS discovered and determined that Lube had misappropriated customer names and competed with MMS in Ohio and Michigan, in violation of the 1995 exclusive distribution agreement.

On September 14, 2006, Lube provided notice to MMS that it was terminating the exclusive distribution agreement, effective (90) ninety days after receipt. [September 14, 2006 Notice of Termination ("2006 Notice"), Pl's Mot. for Summ. J., Ex. 7]. The 2006 Notice does not provide a specific reason for the termination of the exclusive distributorship agreement relationship, but does indicate that the relationship is terminable at will. The 2006 Notice further

announced that Lube would maintain the same discount pricing structure for ninety days, but that due to "MMS's history of late payment on invoices from Lube USA, all sales during the 90 day period will be FOB on a pre-paid cash sale basis." [*Id.*] Beyond the ninety (90) day period, all orders would "be on full-price terms or as may be later negotiated between the parties pursuant to a written agreement signed by both parties." [*Id.*]  MMS contends that prior to receiving the 2006 Notice, Lube began to instigate problems with MMS.  In particular, MMS alleges that Lube refused to ship any products until the past due invoices, totaling approximately $11,000, were paid.  (Def.'s Resp. to Pl.'s Mot. for Summ. J., p. 4)  Even after these outstanding debts had been paid, MMS claims Lube wrongly indicated that MMS still had to pay an additional $4,000 to become current. (*Id.*)  MMS further alleges that after faxing a copy of the check that eliminated the $4,000 debt to Lube, Lube still refused to ship any products to MMS.  (*Id.*).  MMS asserts that this circle of purported debt commenced September 7, 2006, and continued until September 11, 2006, when Lube claimed that it had not received any checks.  Also on September 11, 2006, after recognizing all outstanding debts had been paid, Lube still required MMS to pay a $37.20 as an advance before shipping the requested product.  (*Id.*, p. 5).  On September 13, 2006, Lube informed MMS that it would not ship any product unless all orders were prepaid.  In an effort to receive products from Lube, MMS inquired if it could pay Cash-On-Delivery (COD), to which Lube arguably agreed.  (*Id.*).  However, on September 14, 2006, Lube indicated that all orders except those already submitted had to be prepaid.  (*Id.*)  Since the termination of the exclusive distributorship agreement, MMS avers that it has been able to purchase a very limited supply of Lube product from a California distributor.

The current amount owed by MMS, is the subject of the second Motion for Summary

Judgment filed by Lube.  Subsequent to the 2006 Notice, Lube avers that MMS ordered an

additional amount of Lube product totaling $40,657.10, as evidenced by the November 16, 2006

statement of account.[2]  (Pl.'s Motion for Summ. J. as to its Claims for Breach of Contract and

Unjust Enrichment ("Pl.'s Mot. for Summ. J. #2"), p.1).  MMS denies that it is indebted to Lube

in this amount, and asserts that the disputed inventory is available for return to Lube.

Soon after, on October 2, 2006, Lube filed the instant suit seeking a declaratory judgment

which declares that the Plaintiff has validly exercised its right to terminate the parties'

distributorship relationship.[3]  Arising out of the same factual circumstances, MMS brings the

following counterclaims: (1) breach of contract, (2) tortious interference with contractual and

economic relations, and (3) misappropriation of trade secrets and confidential information.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

central inquiry is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).  After

adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a

party who fails to establish the existence of an element essential to that party's case and on

---

[2] Although the Motion indicates that the statement of account is attached as Exhibit 2, the referenced exhibit is actually the September 14, 2006 correspondence.

[3] The Complaint was later amended to add the following claims: (1) breach of contract, (2) unjust enrichment; (3) false designation/palming off claim in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (4) a violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq*.

which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard "could reasonably find for either the plaintiff or the defendant." *Id.*

## IV.   LAW & ANALYSIS

### A.   Summary Judgment as to MMS's Counterclaims

In its first Motion for Summary Judgment, Plaintiff Lube claims that it is entitled to Summary Judgment on all of Defendant MMS's counterclaims. In opposition, MMS asserts that there are genuine issues of material fact precluding summary judgment as to all of its counterclaims.

#### 1.   Breach of Contract Claims

In Count I of its Counterclaim, MMS alleges that Lube breached its contractual obligations to MMS and, as a result, MMS has suffered damages in excess of $75,000. More

8

specifically, MMS claims that Lube violated the exclusivity provision by directly selling to OME's in its exclusive sales territories of Michigan and Ohio, and by its wrongful termination of the distribution agreement without cause. Relying on the terms reduced to writing in the 1995 Agreement, Lube argues that it is entitled to summary judgment on MMS's breach of contract claim for two reasons: (1) the contract was terminable at will by either party, and Lube provided reasonable notice of termination; and (2) any claims based on the breach of the exclusivity provision are barred by the statute of limitations. On the other hand, MMS alleges that the parties exclusivity agreement was not terminable at will, but rather could only be terminated for cause, and as such there remains a viable breach of contract claim. In regards to Lube's statute of limitations defense, MMS posits that violations of the exclusivity agreement did not rise until 2002, after the meeting with Noubi Ochi, and is therefore not barred by the six year statute of limitations applicable to the breach of contract claims. Assuming, as this Court must, the facts in light most favorable to the non-moving party, there are no material facts indicating Lube was in violation of the 1995 Agreement.

As a preliminary matter, the parties agree that Michigan law is applicable to the instant suit. Under Michigan law, "where the parties have not agreed upon the term, duration, or manner of termination of such an agreement it is generally deemed to be terminable at the will of either party, because they have not agreed otherwise." *Lichnovsky v. Ziebart International Corp.*, 414 Mich. 228, 240-41, 324 NW2d 732 (Mich. 1982). This general rule is equally applicable in the context of distributorship agreements where the parties have failed to include any such method of termination. *Levine and Company, Inc. v. Calkraft Paper Co.*, 429 F. Supp. 1039, 1050 (E.D. Mich. 1976) ("where the distributorship contract contained no express

provision regarding its duration, the general rule appears to be that they are terminable at will by either party or at least upon the giving of reasonable notice."); *see also Intrastate Distributors, Inc. v. NBTY Manufacturing, L.L.C.*, No. 263148, 2005 Mich. App. Lexis 3526, 2005 WL 3501079, *2 (Mich. Ct. App. Dec. 22, 2005).

Indeed, the 1995 memorialization of the parties' oral distribution agreement makes no mention or even inference as to a manner of termination, nor does it contain any durational provisions. However, Defendant MMS submits that the February 20, 1995 letter memorializing the agreement omitted the parties' agreed upon basis for termination should either party desire to end the business relationship. MMS avers, based on the deposition testimony and declaration of its President Timothy Smith that, in a later meeting with Kevin Keating (former CEO of Lube), the parties agreed "as long as MMS made its best efforts to sell Lube's products, it would not be terminated." [Smith Declaration, Def.'s Resp. to Pl.'s Mot. for Summ. Judg. #1, Ex. 1, ¶ 4]. On the basis of this testimony, MMS contends that a material question of fact exists as to "whether the parties reached an agreement upon reasonable notice and with respect to the duration and manner of termination of their oral distribution agreement." (Def.'s Resp. to Pl.'s Mot. for Summ. J. #1, p. 10). In sum, MMS asserts that the oral agreement only gave Lube the right to terminate the parties' agreement upon the determination that MMS was not using its "best efforts" to market Lube products in MMS's exclusive territory. Even accepting MMS's representations of the oral distribution agreement as true, MMS is unable to survive summary judgment as to its wrongful termination of the distribution agreement claim. *Oak Distributing Co. v. Miller Brewing Co.*, 370 F. Supp. 889, 906-907 (E.D. Mich. 1973) ("The essence of the oral agreement was that plaintiffs could continue to handle defendant's products as long as

10

plaintiffs performed satisfactorily.  Such agreements, be they oral or written, have been held to

be terminable at will by either party.").  Therefore, even if the Court were to treat the parties'

agreement as including a "best efforts" clause, the subject distribution agreement would still be

terminable at will and Lube's method of termination would not sustain an action for damages.

Additionally, MMS's breach of contract claim must also fail because it is barred by the

applicable statute of limitations.  Section 600.5807(8) provides for a six-year limitations period

for breach of contract actions, starting from the date that the claim accrued.  Mich. Comp. Laws

600.5807(8).  "A breach of contract claim accrues on the date of the breach, not the date the

breach is discovered."  *Michigan Millers Mutual Insurance Co. v. West Detroit Building Co.*,

196 Mich. App. 367, 372 n.1, 494 N.W.2d 1 (Mich. Ct. App. 1992); *American Federation of*

*State, County and Municipal Employees v. Highland Park Board of Education*, 214 Mich. App.

182, 188, 542 N.W. 2d 333 (Mich. Ct. App. 1995) ("For contract actions, the period of

limitations generally begins to run on the date of the contract breach.").

In the present matter, MMS avers that "Lube breached its contractual obligations to

MMS," (Counterclaim, Count I, ¶51), and as a result MMS has suffered damages in excess of

$75,000.  (*Id.* ¶52).  This Count rests upon Lube's alleged breach of the exclusivity provision of

the distribution agreement by making direct sales to customers in Ohio and Michigan.  The

record demonstrates that the claim accrued, and the limitations period began to run, no later than

1997, when OEMs were taken away and Lube began making direct sales in MMS's exclusive

sales territory.  By letter dated July 21, 1997, Braxton Younts (Lube's National Sales Manager)

informed Timothy Smith that Lube would be hiring a regional sales manager to pursue OEM

accounts within MMS's exclusive sales territory.  [July 21, 1997 Letter, Pl.'s Mot. for Summ. J.,

11

Ex. 3].  The deposition testimony of Timothy Smith further substantiates that he was aware that

Lube was in violation of the exclusivity provision as early as 1997:

> Q.     All right. Well, you already testified that you were aware in 1997 that the
>        OEMs had been taken away from you, correct?
>
> A.     Right.
> ...
>
> Q.     So in addition to the OEM sales, sometime in 1997 or so you learned that
>        Lube USA was making sales in your territory?
>
> A.     Yeah.
> ....
>
> Q.     And then you found out that in 1997, I mean 1997 is a pretty pivotal year,
>        you find out in 1997 that the OEMs are being taken away from you, you
>        no longer have a true exclusive relationship, correct?
>
> A.     That's exactly right.
> ....
>
> Q.     Okay.  And just to finish the trifecta, the last insult was the fact that in the
>        late nineties at some point you found out that not only were the OEMs
>        being taken away, but essentially direct sales were being made and your
>        exclusivity was being violated further.
>
> A.     We, were having a problem, yeah.

[Deposition of Timothy Smith, Summ. Judg. #1, Ex. 1, p. 126, 131, 133].  The deposition

testimony also demonstrates that Timothy Smith even consulted an attorney to determine

whether or not he should bring an action based upon the letter he received in 1999. [*Id.*, p. 165].

The Court finds that there is no genuine issue of material fact that the alleged breach occurred on

or about  July 21, 1997.  Therefore, MMS's breach of contract claim accrued no later than July

21, 1997, and the six-year limitations period bars MMS's October 12, 2007 counterclaim.

      In an effort to circumvent this procedural bar, MMS submits that the breach of contract

claim did not arise until after the March 2002 meeting and renewed agreement with Noubi Ochi. At this meeting, MMS claims that Lube repudiated a previous attempt to terminate the exclusive distributorship contract and "agreed that MMS would serve as Lube's exclusive distributor of Lube products in Michigan and Ohio on the same terms negotiated by Mr. Keating in 1995." (Def.'s Resp to Summ. J. #1, p. 2). MMS avers that it was not until after this meeting that it "discovered and determined that Lube had misappropriated customer names and competed with MMS in Ohio and Michigan." (*Id.*) The Court disagrees. The pivotal date for statute of limitations purposes is the date of the breach, and later transactions that MMS may point to are not sufficient to restart the limitations period. *See Schaefer v. AXA Equitable Life Insurance Co.*, No. 07-10169-BC, 2008 WL 3915149, *8 (E.D. Mich. August 8, 2008). This contract does not fall within the narrow species of contract which permit discrete independent breaches to reset the statute of limitations. *See H.J. Tucker and Associates, Inc. v. Allied Chucker and Engineering Co.*, 234 Mich. App. 550, 562-63, 595 N.W.2d 176 (Mich. Ct. App. 1999) (naming installment contracts, claims for alimony payments, and claims for monthly pension payments among those which accrue upon each individual breach). MMS's view is further belied by the aforementioned deposition excerpts which patently demonstrate Timothy Smith's understanding that a breach of the exclusive distributorship agreement occurred well-before the 2002 meeting. Accordingly, MMS's counterclaim for breach of contract is barred by the applicable statute of limitations.

        2.    <u>Tortious Interference with Contractual and Economic Relationships Claim</u>

In Count II of its Counterclaim, MMS alleges that "Lube's intentionally wrongful

13

conduct [] has interfered in MMS's existing and prospective relationships with its customers."

(Counterclaim ¶54).  Lube asserts that it is entitled to summary judgment as to this claim for

three reasons: (1) MMS has not identified a single contractual or business relationship with

which Lube has improperly interfered; (2) this claim is displaced by the Michigan Uniform

Trade Secrets Act ("MUTSA"), Mich. Comp. Law § 445.1901 *et seq.*, to the extent that it rests

upon the misappropriation of a trade secret; and (3) the claim is partially barred by the applicable

statute of limitations.  Reviewing the merits of each claim, the Court finds each of the asserted

grounds insufficient to warrant judgment as a matter of law.

As a preliminary matter, the Court attempts to clarify the legal claim at issue.  MMS's

tortious interference count, although entitled "Tortious Interference with Contractual and

Economic Relationships," entails and blends two theories: (1) tortious interference with a

contractual relation and, (2) tortious interference with a business relationship.  Although the

theories are commonly treated as the same, under Michigan law they are distinct torts.  *Health*

*Call of Detroit v. Atrium Home & Health Care Services*, 268 Mich. App. 83, 89-90, 706 N.W.2d

843 (Mich. Ct. App. 2005).  Based upon MMS's responsive pleading, and in particular its

recitation of the prima facie elements, the Court concludes that MMS intends to allege tortious

interference with a business relationship.

The elements of a claim for tortious interference with a business relationship are as

follows: "(1) the existence of a valid business relationship or expectancy that is not necessarily

predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the

part of the defendant interferer, (3) an intentional interference by the defendant inducing or

causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the

party whose relationship or expectancy was disrupted."[4]  *Id.* at 90.  The crux of MMS's tortious interference claim appears to rest upon Lube's misappropriation of customer names in order to compete with MMS within the Ohio and Michigan sales territories.

First, relying on the deposition testimony of Craig Johnson (MMS's Vice-President), Lube argues that it is entitled to summary judgment because MMS "could not name one customer, existing or prospective, that it lost because of any act by Lube USA."  (Pl.'s Mot. for Summ. J. #1, p. 15).  However, this contention is refuted by the affidavit of Timothy Smith, wherein he specifically names Cincinnati Milacron, Artery Machine, Quaker Oil, and Fluidline Inc., as customers that MMS lost due to Lube's alleged tortious interference.  Consequently, Lube's initial contention is without merit.

Second, Lube submits that MMS's misappropriation claims are preempted by the MUTSA, M.C.L. § 445.1908, to the extent that they are solely based on the misappropriation of a trade secret.  The Court finds Lube's reasoning unavailing.  Under the MUTSA, courts can "enjoin actual or threatened misappropriation of a trade secret and can also compel affirmative acts necessary to protect a trade secret."  *CMI Intern., Inc. v. Interment Intern. Corp.*, 251 Mich. App. 125, 132, 649 N.W.2d 808 (Mich. Ct. App. 2002) (citing Mich. Comp. Laws § 445.1903 (1), (3)).  Of particular importance to the instant dispute is Section 8 of the MUTSA, which displaces or preempts claims based on conflicting state tort law providing civil remedies for misappropriation of a trade secret.  Mich. Comp. Laws § 445.1908(1); *Wysong Corp. v. M.I. Industries*, 412 F. Supp.2d 612, 622-23 (E.D. Mich. 2005).  On the other hand, the MUTSA does

---

[4]  "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant."  *Health Call of Detroit*, 268 Mich. App. at 89-90.

not displace contractual remedies, other civil remedies that are not based upon misappropriation of a trade secret, or criminal remedies.  Mich. Comp. Laws. § 445.1908(2).  When determining whether or not a claim is displaced by the MUTSA, courts generally examine whether the claim is based solely on the misappropriation of a trade secret.  *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp.2d 943, 946 (W.D. Mich. 2003).  Therefore, if MSS's claim is based solely on the misappropriation of a trade secret then Lube is entitled to summary judgment, and the tortious interference claim must be dismissed.  *Id.*

MMS did not directly address Lube's displacement arguments in its Response, however, MMS did provide the following:

> The per se wrongful act undertaken by Lube was the misappropriation of a customer list and other confidential information by Lube that was later used to contact and solicit customers away from MMS in favor of Lube.

(Resp. to Summ. J. #1, p. 15).  If the Court were to rely on this statement alone the tortious interference claim would fall squarely within the ambit of MUTSA's displacement provision. However, the Counterclaim also provides that the tortious interference claim rests upon an allegation that "Lube's intentionally wrongful conduct described herein has interfered in MMS's existing and prospective relationships with its customers."  (Counterclaim ¶54).  While the general allegations of the Counterclaim do center on the misappropriation of the customer lists and other confidential information, there are additional allegations that could arguably fall within the tortious interference claim.  For instance, many of the factual allegations revolve around Lube's alleged wrongful withholding of product despite the proper payments, which caused significant delays in the payment and invoicing process among MMS's customers. (Counterclaim ¶¶22-40).  Toward this end, MMS also claimed that "Lube improperly threatened

16

to withdraw its product warranties to MMS customers who purchase Lube products from MMS."
(Counterclaim ¶48). These remaining allegations may give rise to a tortious interference claim
independent of the misappropriation of trade secrets. *See Bliss Clearing Niagara, Inc.*, 270 F.
Supp.2d at 950. To be clear: to the extent that MMS's tortious interference claim rests upon the
misappropriation of confidential customer lists, the claim is preempted; however, to the extent
the tortious interference claim rests upon other grounds found within the general allegations, it
may proceed to trial.

Third, Lube asserts that the tortious interference action is barred by the applicable statute
of limitations. This argument, although not completely meritorious, has the effect of limiting the
claim to any alleged interference within the prior three years. Under Michigan law, a tortious
interference claim is subject to a three year statute of limitations. Mich. Comp. Laws §
600.5805(10). This statutory period begins to run once all the elements of the prima facie case
have been met. *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 259 Mich. App. 241, 254, 673
N.W.2d 805 (Mich. Ct. App. 2003) ("a claim of tortious interference with [] prospective
economic advantage is complete upon a showing of the existence of a valid business relationship
or the expectation of such a relationship between the plaintiff and some third party, knowledge
of the relationship or expectation of the relationship by the defendant, and an intentional
interference causing termination of the relationship or expectation, resulting in damages to the
plaintiff."). Because MMS's counterclaims were not filed until October 12, 2007, all claims
arising prior to October 12, 2004 are barred by the statute of limitations. Relatedly, MMS
concedes that the affidavit of Timothy Smith identifies such interference "having occurred in
2005." (Resp. to Summ. J. #1, p. 15).

17

In view of the foregoing, MMS's counterclaim of tortious interference claim survives summary judgment to the extent that the claim does not rest solely on the misappropriation of client lists, and arises after October 12, 2004.

### 3.   Misappropriation of Trade Secrets

In the final count of its Counterclaim, MMS alleges that "Lube has misappropriated trade secrets of MMS in the form of customer information in violation of [M.C.L. § 445.1901], *et seq*." (Counterclaim ¶57).  Lube's opposition to this claim is two-fold: (1) the claim is barred by the statute of limitations; and (2) the claim is subject to summary dismissal because MMS has not identified the allegedly misappropriated information with specificity.  For the reasons that follow, MMS's claim based on the misappropriation of trade secrets is dismissed.

 First, MMS's claim is barred by the applicable statute of limitations.  Section 7 of the MUTSA establishes a three (3) year statute of limitations:

> An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  For purposes of this section, a continuing misappropriation constitutes a single claim.

M.C.L. § 445.1907.  As the instant counterclaim was filed on October 12, 2007, the alleged misappropriation must have occurred after October 12, 2004, in order to be an actionable claim.  It did not.  The testimony of this case clearly demonstrates that the primary event giving rise to the purported violation of the MUTSA, occurred as early as 1997 and, as such, is barred by the applicable statute of limitations.  The deposition testimony of Timothy Smith and the factual circumstances surrounding this case plainly establish that the focal point of the alleged misappropriation was Lube's decision to hire Michael Cloutier, which occurred in September 1997:

Q.     Do you know what trade information was allegedly misappropriated?

A.     Well, the trade information that was the information that we sunk into Mike [Cloutier]'s head in the prior – in the way of training, customer information, discount information, pricing information, you name it.  That was the guy that represented Michigan Manufacturers Service, ended up in our territory working against us.

Q.     And he worked there –

A.     He had prior, again, knowledge as far as who our customer base was, who are distributors were, the pricing, he could go out and compete against us and apparently he did.

[Deposition of Timothy Smith, Mot. Summ. J. #1, Ex. 1, p. 175].  Because the alleged

misappropriation occurred as early as 1998, it is barred by the statute of limitations.  MMS's

claim that the appropriation "took place as recently as June 2005," [Affidavit of Timothy Smith,

Resp. to Mot. for Summ. J. #1, Ex. 7, ¶13], is negated by the statutory language.  Specifically,

M.C.L. § 445.1907 indicates that "a continuing misappropriation constitutes a single claim,"

therefore these subsequent breaches are only derivative of the initial breach occurring in 1997.

Accordingly, this claim is barred by the three (3) year statute of limitations since the alleged

misappropriation was known as early as 1997.

Even if the Court were to analyze the alleged harms as discrete acts of misappropriation,

Lube is still entitled to summary dismissal because MMS has failed to identify the purported

trade secret with sufficient specificity.  This Court has previously held "[t]o properly assert a

claim under MUTSA, a plaintiff must show the information is a trade secret and the defendant

had neither express nor implied consent to use the information."  *Vector Environmental Group,*

*Inc. v. 3M Co.*, No. 06-CV-11264, 2006 WL 3004086, *1 (E.D. Mich. 2006).  "A party alleging

trade secret misappropriation must particularize and identify the purportedly misappropriated

trade secret with specificity." *Id.* at *2. Neither the general allegations of the Counterclaim or the Affidavit of Timothy Smith are sufficient to satisfy the above-cited standard. The most descriptive allegation concerning so-called "customer list and customer information" can be gleaned from the previous deposition testimony. All of these sources combined only provide the Court with the vague allegation that customer information and lists were taken, and therefore is subject to summary dismissal. *See also Raymond James & Associates, Inc. v. Leonard & Co.*, 411 F.Supp.2d 689, 696 (E.D. Mich. 2006) (holding that customer lists created by the employee are not protectatable as trade secrets, including the needs of customers that the former employee learned about during employment with the previous employer.). Consequently, Lube is entitled to summary judgment on MMS's claim arising under the MUTSA.

**B.      Summary Judgment as to Lube's Claims of Breach of Contract & Unjust Enrichment**

Lube's second motion for summary judgment concerns the current amount of debt owed by MMS. According to Lube, MMS ordered approximately $40,657.10 worth of Lube product for which it has not been compensated, and for which MMS refuses to pay. Lube brings the instant motion arguing that it is entitled to judgment as a matter of law as to its claim of breach of contract or, in the alternative, unjust enrichment. Having reviewed the merits of the parties' arguments, the Court concludes MMS breached its contract as a matter of law. As such, the Court declines to address the alternative argument of unjust enrichment.

Rudimentary principles of contract law dictate that MMS is required to compensate Lube for the product ordered. "Under Michigan law, the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the

20

other party injury." *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp.2d 815, 818 (E.D. Mich. 2007); *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453 N.W.2d 304 (1990)).  A cursory review of the record demonstrates that the parties had an agreement that permitted MMS to order Lube products at a discount rate. The parties do not contest that such an oral agreement existed.  This contract, like most others of this nature, required MMS to pay for the items which they received. Even if there were any dispute, the deposition testimony of Timothy Smith undeniably establishes his understanding that the subject goods were shipped with an expectation of payment. [*See* Deposition of Timothy Smith, Pl.'s Mot. Summ. J. # 2, Ex. 4, p. 190].

There is little doubt that MMS breached the contract.  When responding to Lube's first request for admissions, MMS unequivocally admitted that it had "over $35,000 in Lube USA inventory that [it had] not returned or paid for." [MMS's Response to Lube's First Request for Admissions, Pl.'s Mot. Summ. J. #2, Ex. 3].  In the same vein, Timothy Smith testified that he was aware that payments were withheld from Lube:

> **Q.**   And do you acknowledge a payment was not made for those goods that were shipped to you?
>
> **A.**   That's very possible.
>
> **Q.**   All right.  Do you know for a fact that the payment was not made?
>
> **A.**   I know there were some payments withheld.

[Deposition of Timothy Smith, Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. #2, Ex. 2, p.188].  Based on these uncontroverted facts, the record firmly establishes that MMS was in breach of its agreement with Lube by wrongfully withholding payment for the amount owed for the requested product.

21

The parties debate the amount of damages resulting from the breach.  Pursuant to the deposition of James Styles, Lube arrives at the $40,657.10 figure.  Although Lube's brief cites this deposition testimony, neither the excerpt of James Styles' deposition or the November 16, 2006 statement of account were attached as exhibits.  MMS denies owing $40,657.10.  While there may be a dispute as to the amount of damages owed, it does not prevent this Court from ruling as a matter of law regarding MMS's liability.  The amount of damages, however, will be treated as a question of material fact subject to resolution by the trier of fact.

MMS's arguments to the contrary fail to raise a material question of fact and fail to stave off summary judgment as to liability.  Relying on a subsequent affidavit of Timothy Smith, MMS submits that "Lube agreed to accept the return of the disputed inventory,"  (Def.'s Resp. to Pl.'s Mot. for Summ. J. #2, p. 1), which remains in the possession of MMS and is available for return to Lube.  The affidavit also provides that "Lube asked MMS for a list of the now disputed inventory, MMS sent Lube the list, but Lube has refused – despite its agreement, to take back the inventory." [Feb. 6, 2009 Affidavit of Timothy Smith, Def.'s Resp. to Pl's Mot. for Summ. J. #2, Ex. 1, ¶12].  The Court rejects the self-serving, conclusory, and contradictory affidavit of Timothy Smith.

A party cannot create a genuine issue of material fact by filing an affidavit that essentially contradicts his or her earlier deposition testimony.  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006).  However, a party who was not directly questioned about an issue will not be prevented from "supplementing incomplete deposition testimony with a sworn affidavit."  *Id.* at 907.  If there is no direct contradiction, the court "should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to

22

create a sham fact issue." *Id.* at 908 (internal citation omitted).  When making that

determination, the Court should examine: whether the affiant was cross-examined during his

earlier testimony; whether the affiant had access to the pertinent evidence at the time of his

earlier testimony or whether the affidavit was based on newly discovered evidence; and whether

the earlier testimony reflects confusion [that] the affidavit attempts to explain. *Id.* at 909.

A comparison of Timothy Smith's deposition testimony with his recent affidavit

demonstrates the apparent contradiction.  In his deposition, Smith answers as follows:

> Q. Was your – Is the only basis that you understand that payment was withheld
> from Lube USA for this final shipment was because you had some inventory that
> you wanted purchased back?
>
> A.  Well, that was basically the reason we held back, we wanted some kind of
> lever in order to get that inventory out of our – negotiate some kind of return of
> inventory for outstanding invoices.
>
> Q.  Have you ever made any effort to negotiate –
>
> A.  No.

As set forth above, Smith concedes that there were no negotiation efforts for the return of the

Lube product.  However, this representation is in direct conflict with his affidavit wherein he

indicates an agreement to take back the subject inventory.  In the absence of any persuasive

justification for the patent contradiction, the Court discounts the import of the subsequent

affidavit in this regard.  *Yanovich v. Zimmer Austin, Inc.*, 255 Fed. Appx. 957, 961 (6th Cir.

2007) ("A party cannot create a genuine issue of fact sufficient to survive summary judgment

simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit

that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction

or attempting to resolve the disparity.") (internal citation omitted).

In view of the foregoing, the Court finds that Lube is entitled to summary judgment on its breach of contract claim.

## V.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment as to the Counterclaims of Defendant Michigan Manufacturers Service, Inc **[Docket No. 32, filed Dec. 1, 2008]** is **GRANTED** as to the breach of contract and MUTSA claims and **DENIED** as to the tortious interference claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment as to Its Claims for Breach of Contract and Unjust Enrichment **[Docket No. 34, filed Dec. 1, 2008]** is **GRANTED** as to liability for breach of contract, **MOOT** as to the unjust enrichment claim and **DENIED** as to damages.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Excess Pages **[Docket No. 40, filed Feb. 16, 2009]** is **GRANTED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 27, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 27, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager